UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff | Case No. 23-cr-20243 |
| v. | U.S. DISTRICT COURT JUDGE<br>GERSHWIN A. DRAIN |
| LIONEL WILLIAMS | HON. CURTIS IVY, JR.<br>UNITED STATES MAGISTRATE JUDGE |
| Defendant. | |
| _____/ | |

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT [ECF NO. 22]

**I. INTRODUCTION**

Defendant Lionel Williams ("Defendant") faces one charge of Felon in Possession of a Firearm, a violation of 18 U.S.C. § 922(g)(1). See ECF No. 1. Before the Court is Defendant's Motion to Dismiss the Indictment [ECF No. 22]. It was filed on September 5, 2023. The Government responded on September 25, 2023 [ECF No. 23]. Defendant replied on October 2, 2023 [ECF No. 25]. The Motion is fully briefed. Upon review of the briefing and applicable authority, the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court will decide Defendant's Motion on the briefs. See E.D. Mich. L.R. 7.1(f)(2).

For the reasons set forth below, Defendant's Motion is **DENIED.**

## II. FACTUAL AND PROCEDURAL BACKGROUND

The factual background giving rise to this case is recited in the affidavit of FBI Special Agent Daniel Scott. According to the affidavit, on June 29, 2022, at approximately 8:00 a.m., officers of the Detroit Police Department ("DPD") responded to a non-fatal shooting at 820 West McNichols, Detroit, MI. Upon arrival, the DPD officers observed an adult victim ("AV-1") who sustained a gunshot wound to the left hip area. ECF No. 1, PageID.3. The responding officers recovered one brass 9mm Luger spent casing and observed blood on the concrete. *Id*.

Detroit Crime Intel reviewed surveillance video from project Greenlight cameras and observed the incident. After review of the surveillance video, police observed what they believed to be a verbal altercation between AV-1 and Williams. Williams allegedly pulled out a handgun from his waistband and fired a shot at AV-1. Detroit Crime Intel advised police that it observed the suspect get into a red Chevrolet Malibu bearing Michigan license plate discovered to be registered to Williams, who allegedly lives less than a half mile away from the location of the shooting.  ECF No. 1, PageID.4. Officers found Williams' registered address and searched the residence on the same day of the shooting. During the search, officers encountered Williams and located a handgun inside of a

basket, which allegedly contained clothing "consistent with what the suspect wore during the shooting." *Id.*

Williams is charged with being a felon in possession of a firearm under § 922(g)(1). The felonies underlying Williams' criminal charge included three crimes for which he was previously convicted: (1) a 1989 Delivery/Manufacture of a Controlled Substance less than 50 grams, (2) a 1989 Receiving and Concealing Stolen Property, and (3) a 1994 conviction for carrying a concealed weapon. ECF No. 22, PageID.65. In light of Williams' Motion to Dismiss, the Court will discuss the applicable authority and analysis below.

### III.   APPLICABLE LAW

The Second Amendment provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. Const. Amend. II. Williams' Second Amendment challenge is premised on the framework recently articulated by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

Before *Bruen*, the Sixth Circuit employed a two-part test to resolve Second Amendment challenges to regulations. *See United States v. Ramadan*, No. 22-1243, 2023 WL 6634293, at *2 (6th Cir. Oct. 12, 2023) (citing *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012), abrogated by *Bruen*, 142 S. Ct. at

2126−27, and citing *Oakland Tactical Supply, LLC v. Howell Twp., Mich.*, No. 21-1244, 2022 WL 3137711, at *2 (6th Cir. 2022). The first step of the pre-*Bruen* test required the government to offer evidence establishing that the challenged law did not regulate activity protected by the scope of the Second Amendment "as historically understood." *Greeno*, 679 F.3d at 518. In step two, "if the historical evidence [was] inconclusive or suggest[ed] that the regulated activity [wa]s not categorically unprotected," then courts would conduct an inquiry "into the strength of the government's justification" under "the appropriate level of scrutiny." *Id.*, (citing *Ezell v. City of Chicago*, 651 F.3d 684, 701–03 (7th Cir.2011)).

In *Bruen*, the Supreme Court rejected this framework, holding that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2129−30. If the regulation infringes upon presumptively protected conduct, then the government must justify it by pointing to evidence showing the regulation's consistency with the "Nation's historical tradition of firearm regulation." *Id*. at 2130. Thus, post-*Bruen*, courts ask (1) whether the Second Amendment's plain text protects the conduct and, if so, (2) whether the government can justify the regulation's prohibition of that conduct by demonstrating that the regulation is consistent with the Nation's history of firearm regulation. *Id*. at 2129−30.

In determining whether a statue is consistent with the nation's historical tradition of firearm regulation, *Bruen* demands that courts "consider whether historical precedent … evinces a comparable tradition of regulation." *Id*. at 2131-32. If "no such tradition" exists, then the statute being challenged is unconstitutional. *Id*. at 2132. If there are "multiple plausible interpretations" of an ambiguous historical record, courts must "favor the one that is more consistent with the Second Amendment's command." *Id*. at 2141 n.11.

IV. ANALYSIS

In his motion, Williams argues that § 922(g)(1) is unconstitutional in light of the Supreme Court's holding in New *York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Specifically, Williams maintains that his conduct—possessing a firearm as a previously convicted felon—is "presumptively protected by the plain text of the Second Amendment" because the Second Amendment enumerates a right to bear arms that belongs to "the people," including felons. ECF No. 22, PageID.73. And Williams asserts that the government is "unable to rebut th[is] presumption" because § 922(g)(1) is not consistent with this "Nation's historical tradition of firearm regulation." ECF No. 22, PageID.62. Williams advances only a facial attack to the felon in possession statute. Although Williams' reply brief asserts—for the first time—that the statute is unconstitutional "as applied to [him] specifically[,]" Williams presents no analysis and he develops no

argument pertaining to the statute's constitutionality as applied to him and his criminal history. See generally ECF No 22 and ECF No. 25, PageID.127; see also *Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662, 676 (6th Cir.2006) (holding that a district court properly declines to consider an issue raised for the first time in a reply brief); and *United States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir.2006) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) (deeming arguments that are not raised in the party's main brief, or raised merely in a perfunctory manner, as waived).

In *D.C. v. Heller*, the Supreme Court held that the Second Amendment conferred to "law-abiding, responsible citizens" an individual right to keep and bear arms. *D.C. v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 2821 (2008). However, it stated that the Second Amendment's protections were limited with respect to felon disarmament laws, *inter alia*,

> like most rights, the right secured by the Second Amendment is not unlimited . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. [Footnote 26: We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.]

*Id.*, at 2816-17. The Supreme Court reaffirmed these limitations in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786, 130 S. Ct. 3020, 3047, 177 L. Ed. 2d 894

(2010), which held that the Second Amendment right to keep and bear arms is fully applicable to the States by virtue of Fourteenth Amendment. *Id*.

The Sixth Circuit has repeatedly held, post-*Heller* and pre-*Bruen*, that "prohibitions on felon possession of firearms do not violate the Second Amendment." *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010); *see also United States v. Frazier*, 314 F. App'x 801 (6th Cir. Nov.19, 2008); *United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *2 (6th Cir. Mar. 7, 2022); *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010); *United States v. Khami*, 362 F. App'x 501, 507 (6th Cir. 2010); *Stimmel v. Sessions*, 879 F.3d 198, 203 (6th Cir. 2018) ("By acknowledging that 'law-abiding, responsible citizens' are at the core of the Amendment's protections, the *Heller* Court presumed certain individuals can be 'disqualified' from exercising Second Amendment rights." (quoting *Heller*, 554 U.S. at 635, 128 S.Ct. 2783)). In reaching this conclusion, some Sixth Circuit panels have emphasized the government's "compelling" interest in "protecting the community" by "keep[ing] firearms out of the hands of presumptively risky people." See e.g., *United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *2 (6th Cir. Mar. 7, 2022) (citing *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 693–94 (6th Cir. 2016) (*en banc*) (lead opinion) (citation omitted)). Since *Bruen* rejected the means-ends scrutiny test, however, some Sixth Circuit rulings that rely on the means-ends scrutiny rationale may be precarious.

Nonetheless, *Carey* retains its controlling weight post-*Bruen* because it did not apply a means-end scrutiny test. In *Carey*, the defendant moved to have his felony conviction expunged, which would have allowed him to regain his Second Amendment rights. *Carey*, 602 F.3d at 741. The defendant argued that the Second Amendment gave him a fundamental right to possess or carry a firearm, and that denial of his expungement motion denied him this fundamental right. *Id*., at 740. With no mention of governmental interests or means-ends scrutiny, the Sixth Circuit affirmed the denial of the defendant's motion, reasoning that:

> [a]fter *Heller*, this Court affirmed that prohibitions on felon possession of firearms do not violate the Second Amendment. *United States v. Frazier*, 314 Fed.Appx. 801 (6th Cir. Nov.19, 2008). In short, *Heller* states that the Second Amendment right is not unlimited, and, in fact, it is specifically limited in the case of felon prohibitions. *Heller*, 128 S.Ct. at 2816–17.

*Id*., at 740. The *Carey* panel's rationale also relied on *United States v. Frazier*, which likewise relied on *Heller* and made no reference in connection with means-ends scrutiny when it upheld § 922 (g)(1)'s constitutionality under the Second Amendment. *Frazier*, 314 F. App'x 801, 807 (6th Cir. 2008). Because *Carey* reached its conclusion without applying a means-ends scrutiny test, the Sixth Circuit's underlying view on the constitutionality of the felon in possession statute—and the controlling weight of that view post-*Bruen*—ostensibly remains unchanged.

As observed by Judge Parker in *United States v. Holmes*, No. CR 23-20075, 2023 WL 4494340, at *1 (E.D. Mich. July 12, 2023), *Bruen's* majority also reaffirmed the pronouncements made in *Heller*, noting that the right to bear arms is "subject to certain reasonable, well-defined restrictions." *Bruen*, 142 S. Ct. at 2156. Indeed, most of the justices in *Bruen* made similar findings. See *id*. at 2157 (Alito, J., concurring) (stating that the Court's decision did not "disturb[ ] anything that [the Supreme Court] said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns"); *id*. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (reaffirming statements from *Heller* and *McDonald*, which indicated that history and tradition support prohibitions on the possession of firearms by felons); and *id*. at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, J.) (same). The Supreme Court explicitly stated in *Bruen* that it is "[i]n keeping with *Heller*." *Id*., at 2126.

Williams urges the Court to follow the Third Circuit's approach in *Range*. There, the court found that the references to "law-abiding, responsible citizens" in *Heller*, *McDonald*, and *Bruen* were dicta because the criminal histories on the plaintiffs were not at issue in those cases. *Range v. Att'y Gen. United States of Am*., 69 F.4th 96, 101 (3d Cir. 2023). It is true that *Heller* ruled, "[t]he Second Amendment protects an individual right to possess a firearm unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as

self-defense within the home." *Heller*, 128 S. Ct. at 2786. It reasoned that, "the people" as used throughout the United States Constitution "unambiguously refers to all members of the political community, not an unspecified subset [such as a militia]." *Id*. at 2783. Consequently, the *Heller* Court stated that there is "a strong presumption that the Second Amendment right ... belongs to all Americans." *Id*. Based on this language, *Range* suggested that the Second Amendment enumerates a right to bear arms that appears to belong to all members of the political community, which may include felons. *Range*, 69 F.4th at 101.

But the Third Circuit's holding in *Range* is not binding on this Court and it contradicts the Sixth Circuit's interpretation of *Heller*—as stated in *Carey* and *Frazier*. Further, the *Bruen* Court reaffirmed that certain limitations to the Second Amendment exist, such as prohibition of felons possessing guns. Accordingly, the Sixth Circuit's interpretation of *Heller* and its pronouncements upholding the constitutionality of § 922(g)(1) control the outcome of Williams' Motion.[1]

The Sixth Circuit has not discussed the issue in a post-*Bruen* opinion, however, many judges in the Eastern District of Michigan have recognized that *Bruen* did not disturb *Heller's* pronouncements regarding the constitutionality of the felon in possession prohibitions. *See United States v. Holmes*, No. CR 23-

---

[1] Post-*Heller*, most appellate courts upheld the constitutionality of the felon in possession statute, including the Sixth Circuit, as stated *supra*. See *United States v. Keels*, No. 23-20085, 2023 WL 4303567, at *6 (E.D. Mich. June 30, 2023) (Lawson, J.) (collecting cases).

20075, 2023 WL 4494340, at *3 (E.D. Mich. July 12, 2023) (Parker, J.); *United States v. Carter*, No. 22-cr-20477, 2023 WL 3319913 (E.D. Mich. May 9, 2023) (Roberts, J.); *United States v. Bluer*, No. 22-cr-20557, 2023 WL 3309844 (E.D. Mich. May 8, 2023) (Michelson, J.); *United States v. Smith*, No. 2:22-cr-20351, 2023 WL 2215779 (E.D. Mich. Feb. 24, 2023) (Goldsmith, J.); *United States v. Burrell*, No. 3:21-cr-20395, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022) (Cleland, J.); *United States v. Ross*, No. 1:23-CR-20168, 2023 WL 7345908, at *10 (E.D. Mich. Nov. 7, 2023) (Ludington, J.); *United States v. Hopkins*, No. 2:22-cr-20448, Dkt. No. 48 (E.D. Mich. June 6, 2023) (Friedman, J.); and *United States v. Mcilwain*, No. 2:23-cr-20012, Dkt. No. 28 (E.D. Mich. Apr. 26, 2023) (Murphy, J.). Indeed, the Government attaches to its response brief a list of 140 district court opinions from the Eastern District and others that have rejected post-*Bruen* challenges to the constitutionality of § 922(g)(1). ECF No. 23-1, PageID.112.

Given the overwhelming weight of binding and persuasive authority, there is "no reason" for the Court "to conduct an in-depth analysis" of whether the felon-in-possession statute is consistent with this "Nation's historical tradition of firearm regulation." See *United States v. Keels*, No. 23-20085, 2023 WL 4303567, at *6 (E.D. Mich. June 30, 2023) (Lawson, J.) (collecting cases) (citing *United States v. Bluer*, No. 22-20557, 2023 WL 3309844, at *6 (E.D. Mich. May 8, 2023) (internal quotations omitted) (Michelson, J.); see also *United States v. Smith*, No. 22-CR-

20351, 2023 WL 2215779, at *3 (E.D. Mich. Feb. 24, 2023) (Goldsmith, J.) ("Given the Supreme Court's direction on the constitutionality of felon-in-possession statutes ..., this Court does not consider extensive historical discussion essential to resolving [the defendant's] argument" that section 922(g)(1) is unconstitutional under *Bruen*).

As a convicted felon, Williams is disqualified from accessing the protections of the Second Amendment, as informed by *Heller*. Accordingly, his criminal charge for felon in possession of a firearm will go forward.

## III. CONCLUSION

Williams' Motion to Dismiss the indictment is **DENIED**. The Court will conduct a status conference on **December 4, 2023, at 11:00 a.m**.

The Court will adjourn the previously scheduled trial date of October 2, 2023, and related pre-trial deadlines for a period of approximately sixty-one days (61) days. The Court finds that a continuance of sixty-one (61) days is excludable delay, under 18 U.S.C. § 3161(h)(7)(A), because the ends of justice served by the continuance outweigh the best interests of the Defendant and the public in a speedy trial, such that the resulting period of delay shall be excluded in computing the time within which the trial must commence.

IT IS SO ORDERED.

Dated: November 27, 2023          /s/ Gershwin A. Drain
                                  GERSHWIN A. DRAIN

-13-

UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 27, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

-13-